IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVIN BUFFINGTON,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 13 C 7243<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Petitioner Calvin Buffington's ("Buffington") Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 1], Request for a Finding of Civil Contempt [ECF No. 29], Motion for Evidentiary Hearing [ECF No. 32], and Motion to Strike the Government's Response [ECF No. 33] are denied.

### I. BACKGROUND

On December 13, 2007, Buffington was charged in a superseding indictment with conspiracy with intent to distribute and to distribute more than five kilograms of cocaine and more than one kilogram of heroin (Count One), two counts of distribution of more than five kilograms of cocaine (Counts Three and Six), possession with intent to distribute more than five kilograms of cocaine (Count Ten), possession with

intent to distribute more than 100 grams of heroin (Count Eleven), and possession of a firearm in furtherance of a drug trafficking crime (Count Thirteen). As the leader of a large-scale drug trafficking organization based in Chicago, Illinois, Buffington obtained wholesale quantities of heroin and cocaine, which he then directed other members of his organization to store and eventually distribute.

Before he was booked into jail, Buffington agreed to assist in the investigation of his cocaine supplier, Marco Pulido ("Pulido"). Although Buffington developed evidence leading to Pulido's arrest, Pulido fled while on pretrial release and remains a fugitive. The Government contends that once in jail, Buffington continued to direct others to conceal and disburse hundreds of thousands of dollars in drug proceeds.

On several occasions prior to April 2, 2009, Buffington's attorney, Nishay Sanan ("Sanan"), engaged in plea discussions with the prosecutor on Buffington's case, Terra Reynolds ("Reynolds"). Sanan and Reynolds talked about the possibility of a cooperation plea in which Buffington would receive a 40% reduction off the low end of the guidelines range, resulting in a sentence of approximately 16 years. According to Sanan, these conversations were never memorialized in writing, and Reynolds lacked the authority to make a binding plea offer without further approval from the U.S. Attorney's Office.

Buffington has submitted a sworn affidavit stating that Sanan advised him "to reject this offer of sixteen years because [he] 'would get a better deal from the Judge based on [his] cooperation.'" (Buffington Aff., ECF No. 1, ¶ 4.) Sanan has submitted a sworn affidavit of his own, stating that he recommended that Buffington plead guilty based on the proposed terms, but Buffington "refused to do so and opted for a 'blind' plea." (Sanan Aff., ECF No. 23-1, ¶ 8.) "I never told him that he could get a larger reduction for cooperation if he entered a blind plea," Sanan states. (*Id.*) "I told him that he could not get a reduction below 15 years, the mandatory minimum, if he entered a blind plea." (*Id.*) In an April 2, 2009 letter from Sanan to Buffington, appended to Buffington's Motion, Sanan writes to confirm Buffington's intention not to accept the Government's 16-year offer.

On October 29, 2009, Buffington entered a blind guilty plea to all six counts. At this time, Buffington was represented by another attorney, Heather Winslow ("Winslow"). During the plea colloquy, the Court informed Buffington of the applicable statutory minimum and maximum penalties for the offenses with which he was charged and described how Buffington's sentence would be determined. The Court informed Buffington that it could not impose a sentence below the total mandatory minimum term of 15 years — ten years for the drug charges plus an

additional five years for the gun charge.  Buffington indicated his understanding.

At sentencing, the Court determined Buffington's advisory guidelines imprisonment range to be 262 to 327 months, not including the additional five-year term for the gun charge.  The Government asked the Court to impose a within-guidelines sentence, noting the "serious and violent nature of the offense," Buffington's involvement of friends and family in the conspiracy, and his continued participation in the drug scheme after his arrest.  Winslow urged for the mandatory minimum sentence of 15 years, arguing that if Pulido hadn't fled, Buffington would have received the benefit of a § 5K1.1 motion, which allows the Court to depart from the guidelines when a defendant provides substantial assistance to authorities.  The Government disagreed, noting that in April 2009 — two years after Pulido became a fugitive — it was still willing to entertain a cooperation deal with Buffington.  The Government emphasized that it had not filed a § 5K1.1 motion because Buffington had continued to engage in criminal activity after his arrest and because the information Buffington provided had not "made any other cases other than the one against Mr. Pulido."  (Sent. Tr., Case No. 7 CR 410, ECF No. 1074, at 47:11-13.)

The Government noted that it possessed more than 100 pages of reports containing information Buffington had proffered during interviews with various law enforcement agents. The Government stated that these documents would show not only what information Buffington had shared, but also why his cooperation efforts had stopped. The Government then invited Buffington to waive the privilege attached to the reports, but defense counsel declined. (*Id.* at 48:3–6, Ms. Reynolds: "[I]f we're going to go down this road, then let's go down this road." Ms. Winslow: "I have no interest in taking it any further than that, Judge.")

Ultimately, the Court gave Buffington a "two-year break" based on his cooperation in the Government's investigation of Pulido. Taking two years off the low end of the guidelines range, the Court sentenced Buffington to 238 months' imprisonment on the drug charges, plus a consecutive five-year term on the gun charge. When Buffington protested that the Government had offered him a greater sentence reduction in 2009, the Court responded that the size of the drug deals, Buffington's leadership role, and his involvement of family members weighed against affording him "too much of a break." (*Id.* at 54:24–55:2.)

On appeal, Buffington argued that the Government improperly withheld the § 5K1.1 motion. At this time, Buffington was represented by attorney Beau Brindley ("Brindley"). The Seventh

Circuit found that Buffington had waived this argument when he refused to produce the proffers at the sentencing hearing. In any case, the Seventh Circuit went on, Buffington had failed to show that the Government had an unconstitutional motive in not filing the motion. "Buffington's insistence that Pulido's flight was the real reason for the government's inaction rests entirely on his own say-so and finds no evidentiary support in the record," the court concluded. *United States v. Buffington,* 501 F. App'x 560, 563 (7th Cir. 2013).

On October 8, 2013, Buffington timely filed his § 2255 Motion, raising ineffective assistance of counsel claims against Sanan, Winslow, and Brindley. From January to September of 2014, the Government missed numerous deadlines to respond to Buffington's Motion, and the Court granted multiple extensions. On September 25, 2014, the Court granted the Government's Motion for Discovery as to Buffington's trial counsel. After receiving several additional extensions of time, the Government filed its response brief on January 22, 2015. On February 17, 2015, Buffington alerted the Court that he had not yet received a copy of the Government's response, and the Court ordered the Government to serve a copy on Buffington. In a May 26, 2015 filing, Buffington indicated that he had still not received the Government's brief and requested that the Court find the Government in contempt for failure to comply with the Court's

order. By July 16, 2015, Buffington had received the Government's response and filed his reply papers. Several days later, Buffington filed a separate motion seeking an evidentiary hearing. On November 30, 2015, Buffington moved to strike the Government's opposition based on its repeated delays.

## II. **LEGAL STANDARD**

Under 28 U.S.C. § 2255(a), a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that the sentence was imposed in violation of the Constitution or laws of the United States. Relief under § 2255 is an "extraordinary remedy" because the petitioner "already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). Courts are to construe *pro se* motions for collateral review liberally. *Wyatt v. United States,* 574 F.3d 455, 459 (7th Cir. 2009).

"A § 2255 petitioner is entitled to an evidentiary hearing on his claim where he alleges facts that, if true, would entitle him to relief." *Lafuente v. United States,* 617 F.3d 944, 946 (7th Cir. 2010) (citations omitted). However, an evidentiary

hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### III. <u>ANALYSIS</u>

Before reaching the merits of Buffington's ineffective assistance of counsel claims, the Court briefly addresses his May 26, 2015 request to find the Government in contempt for failure to serve him with a copy of its response brief [ECF No. 29], and his November 30, 2015 motion to strike the Government's opposition "as defaulted twice" [ECF No. 33].

Courts possess the inherent power to enforce compliance with their lawful orders through civil contempt proceedings. *Shillitani v. United States,* 384 U.S. 364, 370 (1966). Contempt sanctions can be coercive, inducing a party's future compliance with a court order, or remedial, compensating an injured party for past non-compliance. *Bailey v. Roob,* 567 F.3d 930, 933 (7th Cir. 2009) (citation omitted). A finding of contempt at this stage, however, serves neither purpose. The Government ultimately complied with the Court's April 24, 2015 order to serve its response on Buffington, and Buffington has suffered no injury for which this Court could compensate him. The Court accordingly denies Buffington's request for a finding of contempt.

The Court also declines to strike the Government's opposition. The Court has not received any explanation as to why the Government missed its initial deadlines to respond to Buffington's Motion, except perhaps that the prosecutor currently assigned to the case did not serve as trial counsel. Once assigned in July 2015, the current prosecutor offered several explanations for the Government's continued delay in responding — namely, the need to obtain transcripts and interview prior counsel. (*See,* ECF Nos. 16, 20, 24.)

Although the Government missed numerous deadlines, at times without excuse, this does not require the Court to strike its response. As this Court previously recognized in denying a habeas petitioner's motion for default, Courts are reluctant to resolve a § 2255 motion "without reaching the merits of the claim . . . because such judgments would cause the public at large to suffer by bearing either the risk of releasing prisoners that were duly convicted or the costly and difficult process of retrying them rather than impose hardship on the defaulting party." *Shell v. United States,* No. 03 C 3182, 2004 WL 1899013, at *2 (N.D. Ill. Aug. 16, 2004), *aff'd,* 448 F.3d 951 (7th Cir. 2006). The same policy concerns that weigh against the entry of a default judgment compel this Court to resolve Buffington's § 2255 motion on the merits, with the benefit of full briefing.

Buffington's Motion raises three distinct ineffective assistance of counsel claims. Buffington argues that he received ineffective assistance of counsel during plea negotiations, at sentencing, and on appeal. The framework for evaluating an ineffective assistance of counsel claim is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show that: "(1) counsel's performance was deficient, meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms' and (2) counsel's deficient performance prejudiced the petitioner, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. Brown,* 764 F.3d 790, 795 (7th Cir. 2014) (quoting *Strickland,* 466 U.S. at 687–88). The Court's review of an attorney's performance is highly deferential, and a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States,* 639 F.3d 348, 351 (7th Cir. 2011) (citation and internal quotations omitted).

**A. Ineffective Assistance of Counsel at Plea Stage**

Buffington's first argument is that the attorney during the plea stage of his case, Sanan, was ineffective in advising him

- 10 -

to reject the Government's plea offer of 16 years. In his affidavit, Buffington states that Sanan advised him to reject the Government's offer because he would supposedly get a better deal from the judge at sentencing based on his cooperation. According to Sanan's affidavit, although the Government's offer was informal, he recommended that Buffington plead guilty on the proposed calculations, but Buffington "refused to do so." (Sanan Aff., ECF No. 23-1, ¶ 8.)

The Government argues that Buffington has not established deficient performance because Sanan did not actually advise him to reject the 16-year offer. However, the purpose of inviting affidavits in a § 2255 proceeding, as at summary judgment, is "to determine whether there is a dispute over a material issue of fact, rather than to enable the judge to resolve the dispute by picking one affidavit over another." *Castillo v. United States,* 34 F.3d 443, 445 (7th Cir. 1994) (citations omitted). Thus, to determine whether a material issue of fact is in dispute, and whether Buffington is entitled to an evidentiary hearing, the Court must determine whether Buffington has "allege[d] facts that, if true, would entitle him to relief." *Lafuente,* 617 F.3d at 946.

Turning first to the deficient performance prong of the *Strickland* test, the Government argues that even if Sanan had advised Buffington to reject the 16-year deal, Buffington still

could have received a shorter, 15-year sentence by entering a blind plea. Buffington maintains that it is "ludicrous" to believe he could have relied on receiving a 15-year sentence when he was "surrounded with people daily getting in-guidelines sentences." (Buffington Aff., ECF No. 31, ¶ 10.) An inaccurate prediction that Buffington could have received a lower sentence by pleading blind "is not enough in itself to show deficient performance." *United States v. Barnes,* 83 F.3d 934, 940 (7th Cir. 1996)(citation omitted). Nevertheless, "[a] gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance." *Id.* Ultimately, a defendant can establish deficient performance by showing that his attorney did not make a good-faith effort to determine facts relevant to sentencing and apply them to the case. *Id.* Here, Buffington has not presented any evidence that Sanan failed to undertake these efforts during the plea stage. Therefore, accepting Buffington's allegations as true, he has failed to establish that Sanan performed deficiently.

Moreover, even if Sanan's performance was deficient, Buffington has not shown prejudice. To establish prejudice, Buffington must show that, had Sanan provided competent advice, "there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted it, and that the conviction or sentence or both would

have been less severe than the judgment imposed." *Foster v. United States,* 735 F.3d 561, 566 (7th Cir. 2013) (citing *Lafler v. Cooper,* 132 S.Ct. 1376, 1385 (2012)).

Here, there is no evidence of a formal plea offer. Buffington argues that the plea offer in question was "formal enough," (Buffington Reply, ECF No. 30, at 8), but has not presented any evidence to show that the offer would have been approved by the U.S. Attorney's Office, or presented to or accepted by the Court. Buffington argues that the plea offer was verified by a letter, which he referred to at his sentencing. That letter, however, is the April 2, 2009 communication from Sanan. It is not evidence of a formal, approved agreement. According to Sanan, the offer was the product of non-binding plea discussions that were never memorialized in writing or approved by the U.S. Attorney's Office.

Buffington has also not demonstrated a reasonable probability that the Court would have accepted the offer had it been approved. Although the Court ultimately sentenced Buffington two years below the low end of the guidelines range, the Court advised Buffington that the size of the drug deals, his leadership role in the conspiracy, and his involvement of family members made it difficult to afford him "too much of a break." (Sent. Tr., Case No. 7 CR 410, ECF No. 1074, at 54:24–

55:2.) In the absence of any evidence that the offer would have been finalized, presented to the Court, and accepted, the Court concludes that Buffington has failed to show prejudice.

Because the facts that Buffington alleges do not establish deficient performance or prejudice, even if proven true, the Court rejects Buffington's first ineffective assistance claim without an evidentiary hearing.

### B. Ineffective Assistance of Counsel at Sentencing

Buffington's second argument is that his attorney at sentencing, Winslow, provided ineffective assistance when she prevented the Court from accessing information that would have been relevant to its sentencing determination, thereby waiving the argument that the Government wrongly withheld the § 5K1.1 motion. To prevail on an ineffective assistance of counsel claim in the context of sentencing, Buffington must demonstrate that "his attorney performed in a deficient manner during the hearing, and . . . that but for his counsel's unprofessional error, there is a reasonable probability that the results [of his sentencing hearing] would have been different." *Fuller v. United States,* 398 F.3d 644, 650 (7th Cir. 2005) (alteration in original) (citations and internal quotations omitted).

The Government argues that Buffington has failed to establish prejudice because he has failed to identify what relevant information was withheld. "If he is referring to the

proffer reports that were discussed at his sentencing," the Government argues, "he has failed to indicate what in the proffers . . . would have caused the court to grant him a larger sentence reduction for cooperation."  (Gov't Resp., ECF No. 23, at 16.)  Buffington's memorandum provides little in the way of specificity.  In the accompanying affidavit, Buffington states that his proffers led to the identification and arrest of "other major participants in narcotics trafficking."  (Buffington Aff., ECF No. 1, ¶ 8.)  On reply, Buffington adds that the information he provided helped lead to the arrest of his co-defendant, Kwame Anthony.

At sentencing, Winslow mentioned that the Government was able to arrest and prosecute Anthony based on the information Buffington provided, but declined to take the matter any further when the Government suggested that Buffington's proffers would also show why his cooperation had ended.  This Court afforded Buffington a two-year break because of his efforts to cooperate, but noted that it was unwilling to give "too much of a break" because of the serious nature of the crimes and Buffington's key role.  The Court noted that Buffington's was "one of the most egregious cases from a number of standpoints," such as the quantity of drugs and amount of money involved, and the inclusion of Buffington's mother and brother, who until his

arrest had struggled with drug addiction. (Sent. Tr., Case No. 7 CR 410, ECF No. 1074, at 49:13–52:12.)

On this record, the Court cannot conclude that there is a "reasonable probability" that the results of Buffington's sentencing would have been different had Winslow introduced the 100-plus pages of proffers during the sentencing hearing. The Court explained why it could not give Buffington "too much of a break" in spite of his efforts to cooperate. The sentencing transcript also suggests that Winslow had good reason to withhold the proffers — they would have revealed why Buffington's cooperation came to an end. Because Buffington has not shown prejudice, and Buffington has not overcome the presumption that Winslow's decision was sound, the Court rejects Buffington's second ineffective assistance of counsel claim.

### C. Ineffective Assistance of Counsel on Appeal

Buffington's final argument is that his attorney on appeal, Brindley, provided ineffective assistance in arguing that the Government's decision to withhold a § 5K1.1 motion at sentencing furthered no legitimate governmental interest. Buffington echoes the Seventh Circuit's reasons for rejecting this argument — it was waived during sentencing and supported only by "generalized allegations of improper motive." (Buffington Mem., ECF No. 3, at 3.) According to Buffington, Brindley should have argued that this Court reduced his sentence by two years because

it had implicitly found an improper motive in the Government's decision not to file a § 5K1.1 motion.

To prevail on a claim for ineffective assistance of appellate counsel, Buffington must establish that Brindley "failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009) (citation omitted). Prejudice exists if "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan,* 598 F.3d 416, 425 (7th Cir. 2010) (citation omitted).

A prosecutor retains broad discretion in deciding whether to file a § 5K1.1 motion, and such decisions will be upheld "unless the defendant shows that the decision was based on an unconstitutional motive." *United States v. Buffington,* 501 F. App'x 560, 563 (7th Cir. 2013) (citing *Wade v. United States,* 504 U.S. 181, 185–86 (1992)). A "claim that a defendant merely provided substantial assistance" and "generalized allegations of improper motive" do not entitle a defendant to a remedy or even discovery. *Wade,* 504 U.S. at 186.

Buffington argues that when this Court reduced his sentence by two years, it "concluded that the Government's decision not to reduce sentence was not rationally related to any governmental objective." (Buffington Mem., ECF No. 3 at 4).

However, Buffington does not identify any facts or law supporting this argument. The sentencing transcript shows that the Court gave Buffington a two-year reduction in recognition of his cooperation — it contains no comments or criticisms regarding the Government's decision not to file a § 5K1.1 motion. "A district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 or Rule 35 motion." *United States v. Leiskunas,* 656 F.3d 732, 737 (7th Cir. 2011). Accordingly, there is no basis to conclude that this Court's decision to reduce Buffington's sentence by two years is an implicit comment on the Government's improper motive. Buffington has not shown that such an argument is "both obvious and clearly stronger" than the issues his attorney raised on his appeal. The Court therefore rejects Buffington's final ineffective assistance of counsel claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Buffington's Motion to Vacate, Set Aside, or Correct Sentence [ECF No. 1], Request for a Finding of Civil Contempt [ECF No. 29], Motion for Evidentiary Hearing [ECF No. 32], and Motion to Strike the Government's response [ECF No. 33] are denied. The Court also declines to issue a certificate of appealability because Buffington has not

made a substantial showing of the denial of a constitutional right. *See,* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

						 /s/ Harry D. Leinenweber

						 Harry D. Leinenweber, Judge
						 United States District Court

Dated: 1/25/2016